No. 3--01--1007

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2002

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, )    of the 13th
 Judicial Circuit

) La Salle County, Illinois,

Petitioner-Appellee, )

) 

v. ) No. 83--CF--266

)

TIMOTHY TRAINOR, ) Honorable

) H. Christopher Ryan,

Respondent-Appellant. ) Judge Presiding.

________________________________________________________________

MODIFIED UPON DENIAL OF PETITION FOR REHEARING

JUSTICE SLATER delivered the opinion of the court:

________________________________________________________________

The respondent, Timothy Trainor, was adjudicated a sexually dangerous person in May 1984.  In the past, he has filed several petitions for recovery which have been denied.  In 1998, he filed his third petition for recovery.  See 725 ILCS 205/9 (West 1998).  In response to the petition, the State filed a motion for summary judgment, which the trial court granted.  On appeal, this court reversed and remanded for further proceedings.  See 
People v. Trainor
, 312 Ill. App. 3d 860, 728 N.E.2d 74 (2000) (summary judgment is inappropriate in sexually dangerous persons proceedings).  Our supreme court affirmed.  
People v. Trainor
, 196 Ill. 2d 318, 752 N.E.2d 1055 (2001).  On remand, a jury trial was held.  The jury found that the respondent was still a sexually dangerous person and denied his petition for recovery.  He appeals from that verdict.  On appeal, the respondent argues: (1) the State did not prove beyond reasonable doubt that he was still sexually dangerous; and (2) the trial court erred in its response to a question from the jury during deliberations.  For the following reasons, we affirm.

I.  FACTS

At trial, Dr. Mark Carich testified for the State.  Carich has a bachelor’s degree in psychology as well as a master’s degree and a Ph.D. in counseling.  He coordinates the sexually dangerous persons program at Big Muddy River correctional center.  The respondent was placed in the sexually dangerous persons program in 1984 after molesting five children.  

Carich testified that he was one of the respondent’s group therapists from 1989 to 1995.  Although Carich does not currently treat the respondent on a weekly basis, he said that the therapists in charge of the respondent’s sessions report to Carich about the respondent’s performance.  Additionally, Carich personally interviews the respondent each time he files a petition for recovery.

Carich explained that when he is evaluating a patient who has filed a petition for recovery, he uses 15 factors to determine if the patient has recovered: (1) motivation towards recovery; (2) commitment toward recovery; (3) personal responsibility; (4) social interest; (5) social dimension or relationships; (6) insight into one’s offending cycle; 

(7) change in lifestyle; (8) insight into one’s

developmental/motivational factors; (9) resolution of

developmental/motivational dynamics; (10) sexual identity

issues; (11) control of deviant arousal or behavior; (12) level

of psycho pathology; (13) level of disowning behaviors; 

(14) relapse intervention skills; and (15) self-structure in general.  

Carich testified at length about the respondent’s level of recovery in each of the 15 categories.  Generally, Carich said, the respondent had little motivation or commitment to recovery.  He had been suspended from the program 13 times since 1996.  An offender has to miss four sessions to receive one suspension.  In addition, the respondent did not attend therapy at all from December 1998 until June 2000.  When he did attend a session, his participation was sporadic.

Carich said that the respondent did not take responsibility for his actions.  In his interview with Carich, the respondent only admitted to molesting three children, when he had actually molested five.  Carich noted that the respondent has some empathy for his victims, but he mostly expresses self-pity because he was molested at age 15.  Carich described the respondent as having a combination of personality characteristics, including antisocial behavior, chronic lying, and deceitfulness.  

Carich further testified that the respondent had some insight into why he offends, but he still needs work in that area.  He said the respondent is borderline mentally retarded, which causes him to have difficulty learning and processing information.  However, Carich said that the respondent’s I.Q. is taken into account when he is assessing his success in each of these categories.  Carich noted that the respondent has an inferiority complex and low self-esteem.  He told Carich that if he were released, he would have to live with other people or he might revert to his previous lifestyle.

Carich then testified about other tests that he had used to determine the respondent’s likelihood to re-offend.  Finally, Carich said that it was his opinion within a reasonable degree of medical certainty that the respondent was still a sexually dangerous person who was at high risk for re-offending if he were released into the community.

On cross-examination, Carich noted that after the respondent filed his petition for recovery, he had a one hour interview with Carich.  The information garnered from that interview served as the basis for the socio-psychiatric report.  Carich was then asked what would happen to the respondent if the jury in this case found that he appeared to no longer be dangerous, but it was impossible for them to determine this with certainty while he was under the conditions of institutional care.  Carich answered that the respondent would then go back to Big Muddy River and not be released.

Next, Dr. Jatala, the DOC psychiatrist, testified that he was familiar with the respondent and that he had seen him four times over the past 4½ years.  When Jatala asked the respondent what he had learned from being incarcerated, the respondent told him that he learned what was wrong and what was right.  The respondent told him that he molested children because he was molested when he was 15 years old.  Jatala asked the respondent how he was going to avoid re-offending if he were released.  The respondent said that he was going to watch his environment.  Based upon his examination and the respondent’s case file, Jatala diagnosed the respondent with pedophilia and borderline intellectual function.  Jatala also agreed with Carich that the respondent was still at high risk for re-offending if released back into society.

The respondent testified that he was adjudicated a sexually dangerous person in 1984 after he had molested five children, two of whom were his biological children.  He said that he had been sexually molested by a male nurse when he was young.  The respondent noted that he felt sadness for the children that he molested and that he had no attraction to children anymore.  If released, he would live with his parents and he would not go out alone to avoid re-offending.

During deliberations, the jury sent a letter to the court asking what would happen to the respondent if jury verdict form C was signed.  Verdict form C read, "We, the jury, find the Applicant, Timothy Trainor appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered."  In response, the trial court answered that "the court shall enter an order permitting such person to go at large subject to such conditions and such supervision by the Director as in the opinion of the court will adequately protect the public."  725 ILCS 205/9 (West 2000).

II.  ANALYSIS

A.  Inadequate brief

Before we address the respondent’s issues on appeal, we must address the State’s contention that the respondent is procedurally barred from raising any issue on appeal because his brief is fatally flawed in several respects.  The State’s most serious claim is that the respondent has failed to provide a complete record on appeal.  Specifically, the State claims that the socio-psychiatric report and verdict form C have not been included in the record.

A review of the record indicates that the socio-psychiatric report as well as verdict form C are contained in 

SR 1 and labeled "psychological evaluation" on the outside of the envelope.  Therefore, the respondent has provided a complete record on appeal.  Any other flaws in the respondent’s brief are slight and we will not address them.  

    B.  Sufficiency of the evidence

On appeal, the respondent first argues that the evidence presented by the State was insufficient to prove beyond a reasonable doubt that he was still sexually dangerous.  Within this argument, the respondent raises two sub-issues: (1) Mark Carich is not a qualified psychologist under the Sexually Dangerous Persons Act (Act) (725 ILCS 205/1.01 
et
 
seq.
 (West 2000)); and (2) the socio-psychiatric report was not signed by a sociologist as required under the Act.  See 725 ILCS 205/9 (West 2000).   

1.  Carich’s qualifications

The respondent claims that Carich is not qualified to take part in the socio-psychiatric report because he is not a clinical psychologist.  According to him, the socio-psychiatric report included the use of psychological and neuropsychological testings and assessments for which only a licensed psychologist was qualified to perform.  See 225 ILCS 15/2(5) (West 2000).

A psychologist who files a socio-psychiatric report in a recovery proceeding under the Act does not need to hold a professional license.  
People v. Sizemore
, 311 Ill. App. 3d 917, 726 N.E.2d 204 (2000), 
abrogated on other grounds
, 
People v. Trainor
, 196 Ill. 2d 318, 752 N.E.2d 1055 (2001).  Further, Mark Carich’s degrees and experience qualify him to render an opinion about an offender’s continued dangerousness to society.  
Sizemore
, 311 Ill. App. 3d at 927, 726 N.E.2d at 212.

2.  Sociologist’s signature

Next, the respondent contends that the socio-psychiatric report was not signed by a sociologist as required under the Act.  See 725 ILCS 205/9 (West 2000).  The respondent is mistaken.  The last page of the report indicates that Nancy Henderson-Odum, M.S.W., a social service worker, signed the report.  Therefore, we find no error.

3.  State’s evidence at trial

The respondent also argues that the State’s evidence was insufficient to prove beyond a reasonable doubt that he was still sexually dangerous.

In a recovery proceeding under the Act, the State bears the burden of proof to show beyond a reasonable doubt that the applicant is still sexually dangerous.  
Trainor
, 196 Ill. 2d 318, 752 N.E.2d 1055.  On appeal, a reviewing court must consider all the evidence introduced at trial in the light most favorable to the State and then determine whether any rational trier of fact could have found the essential elements to be proven beyond a reasonable doubt.  
People v. Wittenmyer
, 151 Ill. 2d 175, 601 N.E.2d 735 (1992). 

At trial, Dr. Carich testified that the respondent’s attendance at group sessions was sporadic.  He had been suspended from group therapy 13 times since 1996 for lack of attendance.  When he did attend sessions, his participation was minimal.  He did not attend sessions at all from December 1998 until June 2000.  It is difficult to see how the respondent could be recovered when he chooses to play little or no role in his recovery.  Additionally, the evidence was clear that the respondent does not have the coping skills needed to reenter society at this time.  He told Dr. Carich that if he were released, he would live with his parents.  However, the respondent admitted that he could not be left alone because he might revert to his old lifestyle.  Based on this evidence, we agree with Drs. Carich and Jatala that the respondent remains at a high risk to re-offend.  Accordingly, the State proved beyond a reasonable doubt that the respondent was still sexually dangerous.

C.  Question from the jury

The respondent also argues that the trial court erred when it responded to the jury’s question about what would happen to the respondent if they reached verdict C in this case.  Form C read, "We, the jury, find the Applicant, Timothy Trainor appears no longer to be dangerous but that it is impossible to determine with certainty under conditions of institutional care that such person has fully recovered."  In response, the trial court answered that "the court shall enter an order permitting such persons to go at large and subject to such conditions and such supervision by the Director as in the opinion of the court will adequately protect the public."  See 725 ILCS 205/9 (West 2000).  The respondent claims that the trial court’s answer was insufficient because it failed to consider the realities of what would occur if that verdict was reached.

The trial court has a duty to provide instruction to the jury when it has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion.  
People v. Reid
, 136 Ill. 2d 27, 554 N.E.2d 174 (1990).

Here, the trial court answered the jury by quoting verbatim from the Act.  See 725 ILCS 205/9 (West 2000).  We find that the trial court was under no obligation to interpret the law for the jury and that it correctly cited the law for the jury’s review.  The law is clear that if the jury signed verdict form C, the respondent could be released subject to the program director's conditions that the court determined would adequately protect the public.  Therefore, we find no error. 

Accordingly, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.